**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **DOWNTOWN PROPERTY MANAGEMENT, INC.,** : | | Case No. 1:10-CV-523 |
| : | | |
| : | | Chief Judge Susan J. Dlott |
| **Plaintiff,** : | | |
| : | | **ORDER DENYING DEFENDANTS'** |
| v. : | | **MOTION TO DISMISS,** |
| : | | **ABSTAINING FROM THE** |
| **CITY OF CINCINNATI, et al.,** : | | **EXERCISE OF JURISDICTION,** |
| : | | **AND STAYING THIS CASE** |
| **Defendants.** : | | |

Pending before the Court is the motion to dismiss filed by Defendants the City of Cincinnati (the "City"), Chief of Police Thomas H. Streicher, Jr., and Lieutenant Daniel R. Ogilvie (collectively, "Defendants"). (Doc. 5.)  In that motion, Defendants ask this Court to dismiss the action on the merits or, alternatively, to abstain from exercising jurisdiction over the case and to stay the matter pending resolution of related state court proceedings.  Upon consideration of the parties' filings and the applicable law, the Court **DENIES** the motion to dismiss but will **ABSTAIN** from exercising jurisdiction and **STAY** the instant proceedings.

**I.     BACKGROUND**[1]

    A.     Chronic Nuisance Premises

In 2006, the Cincinnati City Council passed Ordinance No. 296-2006.[2]  The Ordinance enacted Cincinnati Municipal Code ("C.M.C.") Chapter 761, Chronic Nuisance Premises ("Chapter 761"), which authorizes the City to fine or otherwise sanction owners of properties

---

[1] The following facts are taken from Plaintiff's Complaint (doc. 2), the documents incorporated therein, and matters of public record.

[2] City of Cincinnati Ordinance No. 296-2006 and Cincinnati Police Department Policy and Procedure 12.372 are filed as CM/ECF doc. 2-1.

that require what the City considers to be excessive police service for "nuisance activities." C.M.C. § 761-7. Chapter 761 defines "nuisance activities" to include, among other things, assault, menacing, curfew violations, truancy, disorderly conduct, drug possession, prostitution, loud noises, and kidnapping. C.M.C. § 761-1-N.

Each month a unit of the Cincinnati Police Department ("CPD") analyzes the number of calls for police runs to multi-family properties. A monthly report of calls for service for "drugs, disorder, and violence" is then generated to "to determine if any multi-family residential premises are excessive users of police services on a monthly or annual basis." Policy and Procedure 12.372. CPD does not need to make an arrest, issue a citation, or obtain a conviction in order for a call for service to be counted as a nuisance activity; rather, CPD "only needs probable cause to believe that the nuisance activity occurred at the premises." *Id*. A premises will appear on the monthly report when three or more nuisance activities have occurred at the premises on separate dates during a thirty-day period. Additionally, an annual report is generated itemizing the number of nuisance activities that have occurred at the premises within a one-year period, relative to the number of units in each premises. For example, properties with the following number of nuisance activities will appear on the annual report:

> (A) Premises with 2 or 3 residential units: 6 nuisance activities;
>
> (B) Premises with 4 to 19 residential units: 14 nuisance activities;
>
> (C) Premises with 20 to 39 residential units: 18 nuisance activities;
>
> (D) Premises with 40 or more residential units: 11 nuisance activities.

*Id*.

After the requisite number of nuisance activities has occurred, the property owner is

notified by letter that the property is in danger of being declared a chronic nuisance. Within ten days of the owner's receipt of the notice, the property owner must provide the police chief "with a written plan to abate the nuisance activities that is acceptable to the police chief." C.M.C. § 761-3. If another nuisance activity occurs on the property more than thirteen days after the notice has been issued, the police chief may declare the property a chronic nuisance. If a property is deemed to be a chronic nuisance, the premises owner may be billed for the cost of enforcement services and cited civilly or criminally.

A property owner may appeal the chronic nuisance determination and the amount of the bill of enforcement to the Chronic Nuisance Reduction Commander. The Chronic Nuisance Reduction Commander's determination may then be appealed by requesting that an administrative hearing be conducted by a hearing examiner with the Office of Administrative Hearings.

If the property owner is dissatisfied with the hearing examiner's decision, the owner can appeal this determination to the court of common pleas pursuant to § 2506 of the Ohio Revised Code ("O.R.C."). In a court of common pleas, the property owner can challenge not only the basis for the chronic nuisance determination but also the constitutionality of that determination.[3] Significantly, in an administrative appeal under O.R.C. § 2506, a common pleas court may decide only the constitutionality of the administrative agency's order (an as-applied challenge), not the constitutionality of the ordinance at issue (a facial challenge). *See Grossman v. City of*

---

[3] Ohio Revised Code § 2506.04 reads, in pertinent part: "If an appeal is taken in relation to a final order, adjudication, or decision covered by division (A) of section 2506.01 of the Revised Code, the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record."

*Cleveland Heights*, 120 Ohio App.3d 435, 440 (8th Dist. 1997) (Section 2506 appeal declares only the application of an ordinance unconstitutional and does not affect the ordinance's overall constitutionality).  A challenge to the constitutionality of the ordinance itself must be made in a separate declaratory judgment action.  *Id*.

    B.    Procedural History

At least three properties owned by Plaintiff Downtown Property Management ("Plaintiff") have been declared chronic nuisances under Chapter 761 (the "Properties").  Consequently, the City has billed Plaintiff for enforcement costs related to nuisance activities at the Properties.  Plaintiff appealed the chronic nuisance determinations to the Chronic Nuisance Reduction Commander and, after Plaintiff's appeals were denied, Plaintiff requested an administrative hearing with the City's hearing examiner.  At the administrative hearing, Plaintiff challenged the chronic nuisance determinations and the amount of enforcement costs for each of the Properties.  Plaintiff also attempted to challenge the constitutionality of Chapter 761 itself at the administrative hearing.  Noting that he had no authority to hear Plaintiff's constitutional challenges, the hearing examiner upheld the chronic nuisance enforcement actions against the Properties.

On July 9, 2010, pursuant to O.R.C. § 2506.01, Plaintiff filed three separate appeals in the Hamilton County Court of Common Pleas, challenging the hearing examiner's determinations as to the Properties.  These three appeals have been consolidated into one action and are currently pending.[4]  Also on July 9, 2010, Plaintiff filed the present complaint in the

---

[4] *Downtown Property Management, Inc. v. City of Cincinnati*, Hamilton County Court of Common Pleas Case No. A1006416.

4

Hamilton County Court of Common Pleas, a declaratory judgment action challenging the constitutionality of the Chapter 761 itself.  Specifically, Plaintiff claims: (1) Chapter 761 is unconstitutionally vague;  (2) Chapter 761 violates the Equal Protection Clause; (3) Defendants violated Plaintiff's substantive and procedural due process rights in enforcing Chapter 761; (4) the City's enactment of Chapter 761 amounts to an abuse of its corporate powers; and (5) Defendants violated Ohio's Public Records Act by refusing to turn over documents relating to Plaintiff's alleged violations of Chapter 761.  Plaintiff seeks a declaratory judgment, injunctive relief, a writ of mandamus requiring the City to produce records, money damages, costs, and attorneys' fees.

On July 23, 2010, Plaintiff moved to consolidate the present complaint with the three administrative appeals pending in state court.  On August 4, 2010, before the Court of Common Pleas ruled on the motion to consolidate the present complaint with the related state court proceedings, Defendants removed this case to federal court.  On August 24, 2010, Defendants moved to dismiss this action on the grounds that this Court lacks jurisdiction and the complaint fails to state a claim.  (Doc. 5.)  Alternatively, Defendants asked the Court to abstain from exercising jurisdiction over Plaintiff's claims under *Railroad Commission of Texas v. Pullman*, 312 U.S. 496 (1941).

**II.     ANALYSIS**

The Court will first consider Defendants' request that this Court abstain under the *Pullman* doctrine because if abstention is warranted, the Court should not exercise jurisdiction over the matter.  In *Pullman,* the Supreme Court held that when state court construction of an unclear state statute might narrow or eliminate a federal constitutional question, abstention may

5

be justified under principles of comity in order to avoid "needless friction with state policies." *Id.* at 500. There are two requirements for *Pullman* abstention: (1) an unclear state law and (2) the likelihood that a clarification of the state law would obviate the necessity of deciding the federal claim question or at least substantially modify the constitutional issue. *Tyler v. Collins*, 709 F.2d 1106, 1108 (6th Cir. 1983). When *Pullman* abstention is implicated, the District Court should not dismiss the case but should stay the federal proceedings and retain jurisdiction over them. *Id.* at 1109 (citing *England v. Louisiana State Bd. of Med. Examiners*, 375 U.S. 411 (1964). Abstention "does not . . . involve the abdication of federal jurisdiction, but only the postponement of its exercise." *England*, 375 U.S. at 416.

The Court finds that both requirements of *Pullman* abstention are met in this case. As part of the state court proceedings, Plaintiff is challenging the constitutionality of Chapter 761 as applied to Plaintiff's properties and, specifically, the meaning of certain terms of Chapter 761 which Plaintiff asserts are unclear – claims that are nearly identical to those raised in this matter. Thus, a decision by the Hamilton County Court of Common Pleas could obviate the necessity of deciding most, if not all, of Plaintiff's federal constitutional challenges. Given that there is an action pending in state court that will likely resolve the state-law questions underlying the federal claims and the present claims appear to be inextricably intertwined with the issues pending in state court, this Court will abstain from deciding the claims raised in this matter. This Court will, however, retain jurisdiction over Plaintiff's claims until the related state proceedings have concluded, with the expectation that the federal litigation will resume if resolution of the state court proceeding does not obviate the need for this Court to decide the federal claims.

### III. CONCLUSION

In light of the above history, the current posture of this case, and the relevant law, the Court **DENIES** the motion to dismiss and will **ABSTAIN** from exercising its jurisdiction and **STAY** the instant proceedings pending the outcome of the state proceedings.

IT IS SO ORDERED.

                                                                                       s/Susan J. Dlott

                                                                                      Chief Judge Susan J. Dlott

                                                                                      United States District Judge